# IN THE COURT OF APPEALS OF IOWA

No. 19-1552
Filed January 23, 2020

IN THE INTEREST OF I.J., L.J., Z.M., and T.M.,
Minor Children,

A.T., Father of I.J. and L.J.,
     Appellant,

M.M., Mother,
     Appellant.
_____

     Appeal from the Iowa District Court for Polk County, Kimberly Ayotte, District Associate Judge.

     A mother of four children and a father of two children separately challenge the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**


     Colin McCormack of Van Cleaf & McCormack Law Firm, LLP, Des Moines, for appellant father.

     Nicholas A. Bailey of Bailey Law Firm, P.L.L.C., Altoona, for appellant mother.

     Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

     Jeremy M. Evans, Des Moines, attorney and guardian ad litem for minor children.


     Considered by Doyle, P.J., and Tabor and Schumacher, JJ.

**TABOR, Judge.**

This appeal affects four children: nine-year-old T.M., seven-year-old Z.M., five-year-old L.J., and four-year-old I.J. Their mother, Monique, challenges the juvenile court's order terminating parental rights. Antawun, the father of the two youngest children, also appeals.[1] Both Monique and Antawun claim the court should have preserved the parent-child relationships because of their strong bond with the children.

After independently reviewing the record, we land on the same page as the juvenile court.[2] As that court observed, Monique "cannot safely parent her children while still in the throes of her addiction." Similarly, Antawun's "unwillingness to acknowledge the seriousness of his drug use until the termination hearing" was clear and convincing evidence I.J. and L.J. could not be returned to his care at the present time. *See* Iowa Code § 232.116(1)(f) (2019). Neither Monique nor Antawun established termination would be detrimental to the children because of the closeness of the parent-child relationship. *See id.* § 232.116(3)(c); *see also In re A.S.*, 906 N.W.2d 467, 476–77 (Iowa 2018) (holding parent resisting termination

---

[1] The juvenile court also terminated the parental rights of T.M.'s father, Jason, and Z.M.'s father, Timothy. Those fathers do not appeal.

[2] Our review is de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). The juvenile court's fact findings do not bind us, but we accord them weight, especially on witness-credibility issues. *Id.* The State must present clear and convincing evidence to support the termination. *In re A.M.*, 843 N.W.2d 100, 110–11 (Iowa 2014). Evidence satisfies that standard if no serious or significant doubts exist about the correctness of conclusions of law drawn from the proof. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). The best interests of the children ranks as our top priority. *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019).

has burden to prove permissive factors under section 232.116(3)).  Thus we affirm the juvenile court's order.

###### I.      Facts and Prior Proceedings

Monique's daily methamphetamine use in June 2018 led to the removal of her four children.[3]  When she went to jail for possessing methamphetamine and marijuana, she left the children with family members who were also using drugs, according to the Iowa Department of Human Services (DHS).  Citing those risks, the juvenile court adjudicated them as children in need of assistance in July 2018.  I.J., L.J., and T.M. went into foster care.  The DHS placed Z.M. with an aunt.

That fall, Monique missed about half of her twice-weekly visits with the children.  She provided various explanations for her absences, including lack of transportation and homelessness.  When she did see the children, she was engaged and affectionate.  Antawun attended a few visits with Monique, but social workers advised him to schedule separate interactions with I.J. and L.J.

Those separate visitations were necessary because Antawun had a history of domestic violence, including assaults on Monique.  I.J. and L.J. told their foster parents that they had seen their biological parents hitting each other.  After the DHS set up supervised visitations for Antawun, he attended with regularity and both children were happy to see him.

But overshadowing the parents' positive interactions with their children was their continued substance abuse.  Neither parent took effective action to address their addictions while the children were out of their care.  In an April 2019

---

[3] Monique has a fifth child who was fifteen years old and was not a subject of this termination petition.

substance-abuse evaluation, Monique admitted daily intravenous use of methamphetamine. At age 32, she had been abusing methamphetamine for more than a dozen years. She also often used marijuana. She only abstained from drug use while incarcerated. Treatment professionals diagnosed her with severe amphetamine use disorder and moderate cannabis use disorder. Monique started residential treatment at the House of Mercy in May 2019 but abandoned that effort after only three days. The DHS also expressed concern about Antawun's frequent drug use. He admitted using marijuana daily. In late 2018 and early 2019, the DHS repeatedly asked him to wear a patch to screen for drug use. He declined and became agitated with the social workers.

Both Monique and Antawun testified at the August 2019 termination trial. Her testimony revealed a stunning lack of self-awareness. She acknowledged her addiction to methamphetamine but insisted: "As far as quitting drugs, that is not hard for me. I could do that in a hot second." She asserted she could resume custody of the children when she moved into a residential treatment center, which she estimated would be in September 2019. She also admitted using methamphetamine four days before the hearing.

For his part, Antawun at first admitted only marijuana use. He testified he did not believe he would benefit from substance-abuse treatment. After more questioning, he also conceded regular methamphetamine use during the CINA case and his need for "help" with that addiction.

The juvenile court granted the State's petition to terminate parental rights, relying on Iowa Code § 232.116(1), paragraphs (f) and (l). Monique and Antawun appeal.

**II.     Analysis**

Iowa courts analyze termination petitions in three steps. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). First, the court must decide whether the State proved one of the grounds listed for termination in section 232.116(1). *Id.* After finding that proof by clear and convincing evidence, the court must consider whether termination is in the best interests of the children by applying the factors in section 232.116(2). *Id.* If the best-interests test is met, the court must see if any of the permissive factors listed in section 232.116(3) stand in the way of terminating. *Id.*

**A.     Statutory Basis for Termination**

When the juvenile court terminates parental rights on more than one ground, we only need to find the action proper under one section to affirm. *In re J.B.L.*, 844 N.W.2d 703, 704 (Iowa Ct. App. 2014). One of the grounds for termination here was section 232.116(1)(f). That paragraph requires clear and convincing proof of these elements: (1) the children must be at least four years old; (2) they must have been adjudicated CINA; (3) they must have been removed from the home for at least twelve of the last eighteen months, or for the last twelve consecutive months with any period at home being less than thirty days; and (4) they cannot be returned home as provided in section 232.102 at the present time. *See A.M.*, 843 N.W.2d at 11 (interpreting statutory language "at the present time" as the time of the termination hearing).

Because neither parent contests this ground, we need not discuss this step further.[4] *See P.L.*, 778 N.W.2d at 40.

---

[4] In her petition on appeal, Monique alleges in a heading that the juvenile court erred in finding that the State had proven "certain grounds" for termination but does

### B. Best Interests/Permissive Factors

Both Monique and Antawun argue termination is not in the children's best interests. But neither actually discusses the factors in section 232.116(2). Instead, they conflate the best-interests argument with the permissive-factors argument in section 232.116(3).

Antawun contends because he has a "substantial bond" with I.J. and L.J., the court should have refrained from termination under section 232.116(3)(c) (allowing juvenile court to not terminate when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship"). Similarly, Monique highlights her bond with the children and urges "[a]ny danger perceived by not terminating could be addressed through continued individual therapy and counseling."

While Antawun and Monique no doubt have a loving connection with their children, the record does not support their claims that the relationships were so close that termination would bring harm to the children. *See A.M.*, 843 N.W.2d at 113. We must decide whether the disadvantage of termination overcomes the parents' inability to provide for the children's developing needs. *In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010). The record shows I.J. and L.J. felt secure with their foster parents; L.J. feared future instability. And Monique's inconsistency in visits had negative impacts on Z.M. and T.M. Section 232.116(3)(c) did not compel a different outcome under these circumstances.

---

not argue that point in the body of the document. In his petition on appeal, Antawun argues the State did not prove he suffered from a severe substance-abuse related disorder under paragraph (*l*) but does not address paragraph (f).

Monique also argues the juvenile court should have declined to terminate her parental rights to Z.M. because he is in the custody of a relative. *See* Iowa Code § 232.116(3)(a). But the aunt's willingness to care for Z.M. does not countermand the court's appropriate determination to terminate Monique's parental rights. *See A.S.,* 906 N.W.2d at 475. Z.M. should not be left in a state of uncertainty while his mother deals with her serious addiction.

### C.     Delay in Permanency

Finally, Monique asks for six more months to reunify with the children. To grant an extension under Iowa Code section 232.104, the court must determine the need for removal will no longer exist at the end of that time. *In re A.A.G.*, 708 N.W.2d 85, 89 (Iowa Ct. App. 2005). Like the juvenile court, we cannot make such a determination here. Monique has had more than a year to address her substance-abuse disorder and has not moved out of the starting gate. It is unlikely she could provide a stable home for these four children at the end of a six-month extension. *See In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (reiterating parent's past performance portends quality of future care parent can provide).

**AFFIRMED ON BOTH APPEALS.**